**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0153-17T2

RITA STARNER, individually and
as guardian of HANNA STARNER,

    Plaintiffs,

v.

SCOTT HAEMMERLE, BAILEY
SNYDER, and LACEY NOUVEL,

    Defendants,

and

BAILEY SNYDER,

    Defendant/Third-Party
    Plaintiff-Respondent,

v.

STEPHEN STARNER, LIBERTY
MUTUAL INSURANCE COMPANY,

    Third-Party Defendants,

and

GOVERNMENT EMPLOYEES

INSURANCE COMPANY (GEICO),

Third-Party Defendant-Appellant.

_____

Submitted October 3, 2018 – Decided October 24, 2018

Before Judges Alvarez and Reisner.

On appeal from  Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-3076-15

Campbell, Foley, Delano & Adams, LLC, attorneys for appellant (Mario J. Delano on the briefs).

Russell L. Macnow Attorney at Law, LLC, attorneys for respondent (Russell L. Macnow on the brief).

PER CURIAM

By leave granted, Government Employees Insurance Company (GEICO) appeals from a July 24, 2017 order denying GEICO's summary judgment motion and granting summary judgment in favor of defendant Bailey Snyder.[1]  We reverse the order on appeal and remand the matter to the trial court.

As set forth in the motion judge's written opinion, the issue is whether an all-terrain vehicle (ATV) should be considered a "four-wheel passenger auto" within the meaning of an automobile insurance policy that GEICO issued to

---

[1]  Bailey was fourteen years old at the time of the accident.  For clarity, and intending no disrespect, we refer to her by her first name.

A-0153-17T2

Bailey's parents. The GEICO policy covered the parents and their resident relatives while using a non-owned private passenger auto. The policy defined "private passenger auto" as: "a four-wheel private passenger, station wagon or jeep type auto."[2]

At the time of the accident, on May 23, 2015, an adult named Scott Haemmerle had allowed Bailey to drive his ATV, with several passengers, including Hannah Starner and Lacey Nouvel. While driving the ATV at the intersection of two public roads in Forked River, Bailey lost control of the vehicle, which overturned, causing injuries to Hannah. Haemmerle had neither registered the ATV nor purchased insurance coverage for it, and Bailey sought coverage under her parents' GEICO policy.

In granting summary judgment for Bailey, the trial court reasoned that the ATV should be considered a "four-wheel passenger auto" within the meaning of the GEICO policy, and within the definition of "passenger automobile" found in N.J.S.A. 39:1-1, because the ATV had four wheels and the capacity to transport passengers. Additionally, the court reasoned that N.J.S.A. 39:3C-3 permitted a registered ATV to be operated on public roadways.

---

[2] In her brief, Bailey concedes that the ATV was not a jeep-type auto; she claims the ATV was a four-wheel private passenger auto.

A-0153-17T2

Our review of the trial court's summary judgment order is de novo, as is our review of the trial court's legal interpretations. See Townsend v. Pierre, 221 N.J. 36, 59 (2015); Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

On this appeal, GEICO relies heavily on the Supreme Court's decision in Wilno v. New Jersey Manufacturers Insurance Co., 89 N.J. 252 (1982), and on the motor vehicle statutes specifically governing ATVs. N.J.S.A. 39:3C-1 to -34. Because we are bound by Supreme Court precedent, and because the trial court did not specifically distinguish Wilno, it is worth discussing the case in some detail.

Wilno concerned a claim for personal injury protection (PIP) coverage for an accident involving a dune buggy. The case turned on whether the PIP provisions of the No-Fault Act applied to dune buggies. See N.J.S.A. 39:6A-1 to -35. In the Appellate Division, the majority concluded that, even though dune buggies could not be registered for use on the public roadways, a dune buggy was an "automobile" within the meaning of the Act, N.J.S.A. 39:6A-4. 180 N.J. Super. 146, 149 (App. Div. 1981). The majority reasoned that a dune buggy fell within "the literal statutory definition of an automobile" at N.J.S.A. 39:6A-2, which included "a private passenger automobile of a private passenger or station wagon type." Ibid. The majority also relied on N.J.S.A. 39:1-1, which defined

"automobile" as "all motor vehicles except motorcycles."  Id. at 150. The majority concluded that the term passenger "was intended to denote a vehicle which is constructed so as to accommodate riders in addition to the operator" and was "satisfied that this dune buggy was, literally, a private passenger automobile not within any of the express exclusions of the definitional section of the No-Fault Law and hence within the scope of coverage afforded by the Act." Ibid.

Without writing a separate opinion, the Supreme Court reversed, adopting Judge Allcorn's dissent in the Appellate Division.  In his Wilno dissent, Judge Allcorn concluded that "a dune buggy is not a private passenger automobile within the meaning or contemplation of the statute."  180 N.J. Super. at 154 (Allcorn, dissenting).  In reaching that conclusion, the dissent reasoned that a dune buggy did not fit the dictionary definition of "automobile":

> The ordinary and commonly accepted meaning of "automobile" is a "4-wheeled automotive vehicle designed for passenger transportation on streets and roadways and commonly propelled by an internal-combustion engine using a volatile fuel (as gasoline)," Webster's Third New International Dictionary (1971).
>
> A dune buggy, on the other hand, patently is not a private passenger automobile designed and used solely or principally for the transportation of passengers on the public streets and highways. Concededly, it is instead a specially designed and constructed vehicle,

A-0153-17T2

intended and used solely or principally for off-road recreational purposes.

[Id. at 152-53 (citation omitted).]

The dissent emphasized the unusual dangers presented by dune buggies, due to their construction and their intended use as high-risk off-road recreational vehicles. The dissent also reasoned that the Legislature did not intend to require insurers to provide PIP coverage for the risks "voluntarily assumed" by persons driving or riding in dune buggies.

[A] dune buggy is a high-risk [] vehicle by reason of the very nature of its construction, as well as by virtue of the area, terrain and method of operation. The dune buggy here involved was converted from a standard Volkswagen 2-door, 4-passenger, private passenger automobile by the owner and driver . . . . In its converted state at the time of the occurrence of the injuries to plaintiff passenger, the dune buggy had no body no sides, no roof and no windshield. Thus, other than a lap belt, the occupants were afforded no protection whatever against the danger of being thrown out of the vehicle . . . .

Obviously, the dune buggy is intended for off-road use by those who seek the thrill of courting and inviting the risks inherent in driving the vehicle over rough and uneven terrain and under other hazardous conditions, pitting the skill of the driver and the risk of the occupants against upending or overturning the vehicle or, as here, the challenge of speeding around a small, oval dirt and sand racetrack, with uneven and rutted surfaces . . . .

6

Surely, neither the Legislature nor the [insurance] companies intended to cover the risks voluntarily assumed by those persons who deliberately seek out and expose themselves to the known and unknown dangers entailed in driving or riding in a dune buggy in its natural habitat.

[Id. at 153-54.]

Relying on Wilno, GEICO contends that an ATV should not be considered an "automobile" or a "passenger automobile" merely because of its capacity to carry passengers. Rather, we should consider the usual function of an ATV as a purely recreational vehicle, rather than as a form of transportation. GEICO also contends that ATVs are not regulated as automobiles, but rather their use and insurance are covered in section 3C of the motor vehicle code, while automobile insurance is covered by sections 6A and 6B. See N.J.S.A. 39:3C-20; N.J.S.A. 39:6A-3; N.J.S.A. 39:6B-1. [3]

In considering that argument, it is useful to contrast the definitions contained in the general definitions section of Title 39, N.J.S.A. 39:1-1, with the separate definition of ATV set forth in N.J.S.A. 39:3C-1. N.J.S.A. 39:1-1 defines "automobile" as "all motor vehicles except motorcycles." A "motor

---

[3] The ATV statute was amended, effective November 9, 2015. See L. 2015, c. 155. Unless otherwise noted, we will cite to the previous version of the statute, which was in effect on May 23, 2015, when the accident occurred. See L. 2013, c. 135.

vehicle" is defined, with exceptions not relevant here, as including "all vehicles propelled otherwise than by muscular power." Ibid. However, a "passenger automobile" is defined as "all automobiles used and designed for the transportation of passengers, other than omnibuses and school buses." Ibid. "Vehicle" is defined, in pertinent part, as "every device in, upon or by which a person or property is or may be transported upon a highway." Ibid. (emphasis added). Thus, viewed together, all of the foregoing terms are aimed at "vehicles" of various types that are designed to transport people or goods "upon a highway." Ibid.

By contrast, the separate section of Title 39 that regulates ATVs makes clear that they do not fall into that category. N.J.S.A. 39:3C-1 defines an ATV as "a motor vehicle, designed and manufactured for off-road use only." N.J.S.A. 39:3C-1 (emphasis added). A later section of the statute absolutely prohibits operation of an ATV on a limited access highway, N.J.S.A. 39:3C-17(a), and restricts operation of an ATV on any public street or highway except for the very limited purpose of crossing or paralleling the road in order to get to an ATV off-road site. N.J.S.A. 39:3C-17(b).

We quote the latter sections because they illustrate the very narrow circumstances in which an ATV may be operated on or next to a public roadway:

b.  No person shall operate a snowmobile, all-terrain vehicle, or dirt bike upon the main traveled portion or the plowed snowbanks of any public street or highway or within the right-of-way limits thereof except as follows:

(1)  Properly registered snowmobiles, all-terrain vehicles, and dirt bikes may cross, as directly as possible, public streets or highways, except limited access highways, provided that such crossing can be made in safety and that it does not interfere with the free movement of vehicular traffic approaching from either direction on the public street or highway.  Prior to making any such crossing, the operator shall bring the snowmobile, all-terrain vehicle, or dirt bike to a complete stop. It shall be the responsibility of the operator of a snowmobile, all-terrain vehicle, or dirt bike to yield the right-of-way to all vehicular traffic upon any public street or highway before crossing the public street or highway.

(2)  Whenever it is impracticable to gain immediate access to an area adjacent to a public highway where a snowmobile, all-terrain vehicle, or dirt bike is to be operated, the snowmobile, all-terrain vehicle, or dirt bike may be operated adjacent and parallel to the public highway for the purpose of gaining access to the area of operation.  This subsection shall apply to the operation of a snowmobile, all-terrain vehicle, or dirt bike from the point where the snowmobile, all-terrain vehicle, or dirt bike is unloaded from a motorized conveyance to the area where it is to be operated, or from the area where operated to a motorized conveyance, when the loading or unloading cannot be effected in the immediate vicinity of the area of operation without causing a hazard to vehicular traffic approaching from either direction on the public highway.  The loading or unloading must be

9

accomplished with due regard to safety, at the nearest possible point to the area of operation.

[N.J.S.A. 39:3C-17(b).]

The section of the statute on which the trial court relied in concluding that ATVs can generally be driven on public roads, N.J.S.A. 39:3C-3, does not by its terms affirmatively permit ATVs to be driven on public roadways. Rather, this section requires that an ATV be registered before it can be operated on a public roadway in the limited situations allowed elsewhere in the statute.

Except as otherwise provided, no snowmobile, all-terrain vehicle, or dirt bike shall be operated or permitted to be operated on or across a public highway or on public lands or waters of this State unless registered and numbered by the owner thereof as provided by [N.J.S.A.] 39:3C-1 et seq.

[N.J.S.A. 39:3C-3.]

Further distinguishing ATVs from passenger automobiles, which are required to be insured pursuant to N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1, a separate statutory section governs the requirement that ATVs be insured. An ATV may not be operated "or permitted to be operated" unless the owner has obtained an insurance policy with a limit of $15,000 per person and $30,000 per accident. N.J.S.A. 39:3C-20. Additionally, while N.J.S.A. 39:3C-19 requires ATV operators and passengers to wear protective helmets, and N.J.S.A. 39:3C-

30 requires the operator to comply with various traffic laws when crossing a public highway, the statute has no provision requiring an ATV operator to have a driver's license. Hence, fourteen-year-old Bailey could drive the ATV, although she could not lawfully operate an automobile.

All of these statutory provisions convince us that an ATV is not a private passenger automobile. Further, given that an ATV cannot be driven on public roads, except to cross a road in order to reach an ATV site, and given that children can drive ATVs, we conclude that no reasonable policyholder would believe that the GEICO policy reference to "private passenger auto" coverage would extend to an ATV. Lastly, even if we had doubts about our conclusion, we are bound by the Supreme Court's holding in Wilno. Given Judge Allcorn's reasoning, which the Court adopted, we can find no principled basis on which to distinguish the case.

Bailey's brief contends that the term "private passenger auto" is ambiguous, because the policy did not define the term. She invokes the well-established principle that ambiguous policy terms must be construed favorably to the insured. See DiOrio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269 (1979). However, based on our previous discussion, we cannot conclude that the term is ambiguous, or that a policyholder would reasonably believe it covered an ATV.

11

Relying on <u>Salem Group v. Oliver</u>, 248 N.J. Super. 265 (App. Div. 1991), <u>aff'd</u>, 128 N.J. 1 (1992), she also argues that GEICO could have included a specific exclusion for recreational motor vehicles. We conclude <u>Salem</u> is not on point, because it addressed homeowners insurance. Finally, Bailey argues that <u>Wilno</u> was a four-to-three decision by the Court and has not been cited frequently since it was decided. Those considerations do not relieve us from following the decision as binding precedent.

Consequently, we are constrained to reverse the order on appeal. We remand this matter to the trial court with direction to enter summary judgment for GEICO on the coverage issue, and to continue the litigation involving all of the other parties that remain in the case.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0153-17T2