TOOKEY, J.
*387 Plaintiff appeals a limited judgment that was entered following the trial court's grant of summary judgment in favor of defendant *497 insurer.[1] Plaintiff, by and through his guardian ad litem , began this declaratory judgment action to determine whether a homeowners' insurance policy that defendant had issued covers the liability of the insureds, the Pollards, in an underlying action against them. The trial court granted defendant's motion for summary judgment, ruling that the policy does not cover the Pollards' potential liability because of the motor vehicle exclusion in the policy. Plaintiff assigns error to the trial court's grant of summary judgment in favor of defendant, contending that the motor vehicle exclusion does not apply to plaintiff's claim against Alta Pollard.[2] For the reasons that follow, we conclude that the trial court did not err when it granted defendant's motion for summary judgment and, accordingly, we affirm.
"Because this case arises on defendant's motion for summary judgment, we state the facts in the light most favorable to plaintiffs." Dewsnup v. Farmers Ins. Co. , 349 Or. 33, 35, 239 P.3d 493 (2010). Defendant sold a homeowners' insurance policy to John and Alta Pollard, which, subject to various exclusions, covered their personal liability for bodily injury to others. While the policy was in force, plaintiff's mother took plaintiff, who was just under two years old, to the Pollards' home and left plaintiff in Alta's care while plaintiff's mother ran errands. Alta knew that John was intoxicated from drinking alcohol. Nevertheless, Alta allowed John to place plaintiff between his knees on an all-terrain vehicle (ATV) and drive around the premises without plaintiff wearing a helmet or protective gear. At some point, John drove the ATV onto a public road and ran the ATV into a fence, which caused the ATV to roll and eject plaintiff, causing plaintiff serious bodily injury.
*388 Plaintiff filed the underlying negligence action against the Pollards, alleging that, Alta's "failure to reasonably supervise" plaintiff on the premises of the insured, and John's actions, both on and off of the premises, caused plaintiff's injuries. The Pollards tendered an insurance claim to defendant, which defendant denied on the basis of the motor vehicle exclusion to coverage in the policy. Plaintiff then filed this declaratory judgment action against defendant to determine whether the Pollards' homeowners' insurance policy covers the Pollards' liability in plaintiff's action against them. In response, defendant moved for summary judgment, contending that the Pollards' insurance policy excludes claims for bodily injury that do not occur on the insured premises and that result from the use of a motor vehicle. The trial court agreed with defendant and granted the motion for summary judgment.
As noted above, on appeal, plaintiff does not dispute the trial court's determination that his claim against John Pollard is excluded from coverage under the policy because the plaintiff's injuries resulted from the use of a motor vehicle off of the insured premises. Plaintiff's sole argument on appeal is that the trial court erred when it determined that the policy excluded coverage for Alta's negligence; plaintiff contends that Alta's negligence is not subject to the motor vehicle exclusion in the policy because Alta's negligent supervision of plaintiff occurred on the insured premises and resulted in a foreseeable harm to plaintiff.
On the other side, defendant contends that the motor vehicle exclusion in the Pollards' policy applies to plaintiff's negligent supervision claim against Alta because the "exclusion applies to any claim for injury that 'results from' the use of a motor vehicle," and "[w]hat determines whether a claim is covered is the nature of the injury , whether it is vehicle related, not whether the alleged negligence is vehicle related, nor where the negligence occurred." (Emphasis in defendant's brief.)
To determine whether the trial court erred when it granted defendant's motion *498 for summary judgment, we "examine[ ] the summary judgment record, in accordance *389 with ORCP 47 C, to determine whether the pleadings and any supporting documents on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." Bresee Homes Inc. v. Farmers Ins. Exchange , 353 Or. 112, 114, 293 P.3d 1036 (2012). In disputes such as this one, that turn on the meaning of an insurance policy, "the primary and governing rule is to ascertain the intention of the parties" and, to do so, "we examine the terms and conditions of the policy, and where a particular term is not defined in the contract, we begin by identifying that term's plain meaning." Dewsnup , 349 Or. at 39-40, 239 P.3d 493 (brackets, ellipsis, internal quotation marks, and internal citations omitted). We are mindful that "[i]f the term has no plain meaning; that is, if the term is ambiguous, we examine that term within the context of the policy as a whole" and, "[i]f two or more plausible interpretations still remain, we construe the term against the drafter and in favor of the insured." Id. at 40, 239 P.3d 493.
We begin our analysis with "Coverage E" in the policy, which provides, in pertinent part, that "[w]e will pay those damages which an insured becomes legally obligated to pay because of bodily injury, property damage or personal injury resulting from an occurrence to which this coverage applies" and, "[a]t our expense and with attorneys of our choice, we will defend an insured against any covered claim or suit." Additionally, "Coverage F" provides that "[w]e will pay the necessary medical expenses for services furnished to a person other than you or any resident of your household within 3 years from the date of an occurrence causing bodily injury." The policy defines an "occurrence" as "an accident including exposure to conditions which results during the policy period in bodily injury or property damage."
However, those policy provisions must be read in relationship to the exclusions in the policy. The policy sets forth certain exclusions "applying to Coverage E and F-personal liability and medical payments to others." The pertinent exclusion states:
"We do not cover bodily injury, property damage or personal injury which:
*390 "* * * * *
"7. results from the ownership, maintenance, use, loading or unloading of:
"* * * * *
"b. motor vehicles[.]"
As relevant here, the policy defines "motor vehicle" as "any * * * motorized land vehicle designed for recreational use off public roads," but that definition does not include "a motorized land vehicle, not subject to motor vehicle registration, used only on an insured location." Reading the exclusion and definition together, the apparent purpose of the exclusion is to require the insured to obtain separate liability insurance for recreational vehicles, except when they are "used only on an insured location." The parties do not dispute that, once the ATV left the Pollards' property and was traveling on the public road, the ATV was a "motor vehicle" within the policy's definition.
Plaintiff, relying on the definition of "occurrence" in the policy, contends that Alta's negligent supervision of plaintiff on the insured premises "constituted an occurrence under the policy because [it] exposed the child to conditions resulting in bodily injury" and, because "the policy insures against" the use of the ATV on the insured premises, the policy coverage should extend to Alta's acts.
Plaintiff's construction of the policy ignores the applicability of the motor vehicle exclusion to occurrences that cause bodily injury. See Leach v. Scottsdale Indemnity Co. , 261 Or. App. 234, 242, 323 P.3d 337, rev. den. , 356 Or. 400, 339 P.3d 440 (2014) (a construction that requires us to disregard a provision of the policy is unreasonable, "as a matter of law"). The policy covers the insured's liability for "bodily injury * * * resulting from an occurrence to which this coverage applies ." (Emphasis added.) Thus, the policy insures against accidents that *499 cause bodily injury, unless the bodily injury is caused in a manner or by an instrumentality for which the policy excludes coverage. As noted above, the policy unambiguously excludes coverage for "occurrences," i.e. accidents, including exposure to conditions, which result in bodily *391 injury, when the bodily injury "results from the * * * use * * * of" "motor vehicles" off the premises of the insured.
In this case, plaintiff's injuries were the result of John's and plaintiff's "use" of a "motor vehicle" on a public road. See American Economy Ins. Co. v. Hughes , 121 Or. App. 183, 186, 854 P.2d 500 (1993) (construing a nearly identical exclusion for the "use" of a motor vehicle and concluding that the homeowners' policy exclusion for "using" a motor vehicle applies to passengers because an "exclusion for 'using' a motor vehicle is broader than one for 'operating' a motor vehicle"). The policy specifically and unambiguously excludes coverage for bodily injury that results from the "use" of "motor vehicles," such as the one used in this case, and the application of the exclusion under the policy does not depend on plaintiff's theory of liability or the defendant against whom his claim is stated.[3]
In our analysis, we are guided by our decision in Farmers Insurance Group v. Nelsen , 78 Or. App. 213, 715 P.2d 492, rev. den. , 301 Or. 241, 720 P.2d 1280 (1986). In that case, Welch was injured when the Nelsens' minor son, Robert, collided with him while Robert was operating a dirt bike on a public road. Id. at 215, 715 P.2d 492. Welch sued the Nelsens, alleging, among other things, "that the Nelsens were negligent * * * in failing to exercise reasonable control and supervision over Robert in his operation of the vehicle." Id. Farmers Insurance Group, the insurer, brought a declaratory judgment action to determine whether the Nelsens' homeowners' insurance policy covered their liability, and moved for summary judgment on the ground that coverage for Welch's injury was excluded by a motor vehicle exclusion clause similar to the one at issue *392 in this case. Id. at 215-16, 715 P.2d 492.[4] Welch and the Nelsens argued that, "the policy provided coverage for Welch's claim against the Nelsens, because the claim rests on legal theories," including "negligent supervision, under which the Nelsens could be liable for their own negligence" and because the claim of "negligent supervision do[es] not arise out of the * * * use or operation of a motor vehicle, but instead out of the Nelsens' separate negligent conduct." Id. at 216, 715 P.2d 492. The trial court agreed with Welch and the Nelsens and denied the insurer's motion for summary judgment. Id.
On appeal, we noted that, "[t]he policy covers liability for bodily injury, unless the injury is caused in a manner or by an instrumentality *500 for which the policy excludes coverage" and that "that coverage under the policy does not vary depending on the theory of tort liability which is asserted." Id. We concluded that the trial court erred when it denied the insurer's motion for summary judgment because "Welch's injury arose out of Robert's operation and use of the motor vehicle off of the premises of the insured, and the policy specifically and unambiguously excludes liability for that, no matter against whom a claim is stated or under what theory of liability Welch seeks to recover." Id. at 216-17, 715 P.2d 492. In reaching our conclusion, we were persuaded by numerous cases that "hold that the policy insures, not against theories of liability, but against liability *393 for certain injuries or damage and that injuries caused by motor vehicles off the premises of the insured are not covered by a homeowner's policy." Id. (collecting cases).[5]
Our holding in Farmers Insurance Group applies under the circumstances of this case. Here, plaintiff's negligent supervision claim is based on Alta's act of allowing plaintiff to use the ATV with John-this is not a case where there is an independent nonmotor vehicle related cause of plaintiff's bodily injuries that would take the claim outside of the motor vehicle exclusion.[6] John's and plaintiff's use *394 of the ATV off the premises of the insured triggered the Pollards' alleged liability for plaintiff's bodily injuries, and the policy unambiguously excludes coverage for bodily injuries that result from such a use. Because plaintiff's bodily injuries resulted from the use of the ATV off the premises of the insured, plaintiff's claim squarely falls within the exclusion for coverage, irrespective of "whom [plaintiff's] claim is stated [against] or under what theory of liability [plaintiff] seeks to recover." Id. at 217, 715 P.2d 492.
We conclude that the trial court did not err in granting defendant's motion for summary judgment because there is no genuine issue *501 as to any material fact and defendant is entitled to prevail as a matter of law.
Affirmed.

Because there are multiple defendants in this case, for clarity, we refer to defendant-respondent Truck Insurance Exchange (collectively Farmers) as "defendant" throughout this opinion.

On appeal, plaintiff does not dispute the trial court's determination that his claim against John Pollard is excluded from coverage under the policy.

Conversely, coverage for personal injury does depend on plaintiff's theory of liability. Under "Coverage E," "[p]ersonal injury means any injury arising from" various theories of tort liability such as false arrest, invasion of rights of privacy, libel, slander, or defamation of character. We decline to impose a condition on the applicability of the motor vehicle exclusion that relates to plaintiff's theory of liability, when the language of that exclusion regarding coverage for bodily injury is not constrained by plaintiff's theory of liability. See ORS 42.230 ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all.").

That policy provided, in pertinent part:
" 'If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:
" 'a. pay up to our limit of liability for the damages for which the insured is legally liable; and
" 'b. provide a defense at our expense by counsel of our choice * * *
" '* * * * *
" 'Section II-Exclusions:
" '1. Coverage E-Personal Liability and Coverage F-Medical Payments to Others do not apply to bodily injury or property damage:
" '* * * * *
" 'e. arising out of the ownership, maintenance, use, loading or unloading of:
" '* * * * *
" '(2) a motor vehicle owned or operated by, or rented or loaned to any insured * * *.' "
Farmers Insurance Group , 78 Or. App. at 215, 715 P.2d 492.

We note that, although case law from other states is not binding upon us, the interpretation of the motor vehicle exclusion proffered by defendant is consistent with that of other courts which have recognized that coverage under automobile policies is often "dovetailed" into the motor vehicle exclusion in homeowners' policies "to provide for uniform, non-duplicative liability coverage," and that "[t]he practice of excluding [motor vehicle] liability from coverage under a comprehensive liability policy and issuing a separate automobile policy is relevant to the issue of whether the [motor vehicle] exclusion is ambiguous." Northern Ins. Co. of New York v. Ekstrom , 784 P.2d 320 (Colo. 1989) ; see also Wolfe v. Ross , 115 A.3d 880, 893 (Pa. Super. Ct. 2015), rev. allowed , 633 Pa. 414, 125 A.3d 408 (2015) (noting that, "with regard to public policy, the rational for excluding coverage for injuries arising out of operation or use of an insured's vehicle * * * in a homeowner's policy is obvious: the homeowner's carrier is seeking to avoid liability for the losses that attend the higher risks associated with motor vehicles operated on public roads and which are traditionally covered by the insured's motor vehicle policy"); Bankert v. Thershermen's Mut. Ins. Co. , 105 Wis.2d 438, 446, 313 N.W.2d 854 (Wis. Ct. App. 1981), aff'd , 110 Wis.2d 469, 329 N.W.2d 150 (Wis. 1983) (discussing "the sound public policy embodied in separate policies of homeowner's and automobile insurance" and noting that "[e]ach policy insures a different risk for a premium appropriate to that risk" because "[o]verlapping coverage results in added costs to the insured without a proportionate benefit in improved coverage").

We further note that, in cases where "the negligent supervision is so inextricably intertwined with the motor vehicle, [such that] there is no independent nonauto-related act which would take the claim outside the scope of the motor vehicle exclusionary clause," the rule that " '[c]overage does not turn on the legal theory under which liability is asserted, but on the cause of the injury' " has been adopted by a "majority of jurisdictions." Taylor v. American Fire and Cas. Co. , 925 P.2d 1279, 1282-83 (Utah Ct. App. 1996), rev. den. , 936 P.2d 407 (Utah 1997) (quoting Farmers Insurance Group , 78 Or. App. at 218, 715 P.2d 492, and explaining the minority and majority positions); compare Illinois Farmers Ins. Co. v. Wiegand , 808 N.E.2d 180, 181-92 (Ind. Ct. App. 2004) (adopting "the majority line of reasoning" and concluding that the motor vehicle exclusion applied to a claim of negligent supervision against parents who allowed their child and the child's friend to use ATVs, because the bodily injury occurred when the child and her friend drove off of the insured's property onto a country road and the friend struck a tree), with Richland Knox Mut, Ins. Co. v. Kallen , 376 F.2d 360, 364-65 (6th Cir. 1967) (where passenger in rear seat of automobile lit a firecracker and unsuccessfully attempted to throw it out of the window, resulting in injuries to another passenger, the accident was not one that resulted from the "use" of a motor vehicle and the motor vehicle exclusion did not apply).